

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JEREMIAH WILSON, | ) | No. ED106567 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable John D. Warner, Jr. |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 26, 2019 |

## Introduction

Jeremiah Wilson ("Wilson") appeals the motion court's denial of his motion to vacate, set aside or correct his sentence pursuant to Rule 24.035[1] without an evidentiary hearing. In his sole point on appeal, Wilson contends that the motion court clearly erred in denying his Rule 24.035 motion without an evidentiary hearing because plea counsel inaccurately advised him that he would receive credit for prison time he served in Illinois during the pendency of his case. Because the record conclusively refutes Wilson's allegation of prejudice, we affirm.

## Factual and Procedural History

On January 9, 2014, Wilson pleaded guilty to the charge of theft in Illinois. The Illinois sentencing court sentenced Wilson to three years in prison. While Wilson was serving time in Illinois for the Illinois theft charge, the State of Missouri charged Wilson with first-degree

---

[1] All Rule references are to Mo. R. Crim. P. (2016).

robbery for an incident occurring during June 2013. On August 25, 2016, Wilson pleaded guilty to the charged offense not pursuant to any recommendation from the State.[2]

At the plea hearing, the State outlined its evidence against Wilson: Wilson, acting with another, forcibly stole $41,435.00 in merchandise at gunpoint from an AT&T store and fled the scene in a gray SUV. Law enforcement later found the gray SUV, which contained DNA and fingerprint evidence linking Wilson to the vehicle. Wilson confirmed the truth of these allegations and admitted to participating in the robbery. The State outlined the range of punishment as ten years to thirty years or life in prison. Wilson confirmed that he understood the range of punishment.

Wilson further assured the court that he also understood the nature of his blind guilty plea. Wilson stated that he had sufficient time to speak with plea counsel, plea counsel advised him of the consequences of his blind guilty plea, and plea counsel adequately investigated his case. Wilson had no general complaints or criticisms of plea counsel's services. Additionally, Wilson said that no one made him any promises about the outcome of the plea and that no one told him how long he would be confined or have to serve as a result. Specifically:

> COURT: Has anybody made any promises to you about the outcome of your plea of guilty, other than I will make the decision as to what your sentence will be?
> WILSON: No, sir.
> COURT: Has your attorney or anyone else told you how long you will be confined or have to serve in the penitentiary, if the Court accepts your plea of guilty and imposes a sentence of confinement?
> WILSON: No, sir.

The plea court subsequently accepted Wilson's guilty plea and scheduled the sentencing hearing.

---

[2] A plea not pursuant to the State's recommendation is also called a blind plea, "in which the defendant pleads guilty without any agreement with the prosecutor or court as to the sentence and with an understanding that the [] court could impose any sentence within the authorized range of punishment." Stanley v. State, 490 S.W.3d 389, 391 n.1 (Mo. App. E.D. 2016).

2

At the sentencing hearing, the sentencing court acknowledged reviewing letters written by Wilson's family members. Upon sentencing Wilson to twenty years in prison, the sentencing court affirmatively stated that Wilson would receive "credit for time served on [his] Illinois case . . . and [his] time will be run concurrent with any sentence [he has] in Illinois." The written sentence entered by the sentencing court stated that Wilson's sentence was twenty years, "to be served concurrent with credit for time served" with 13CF1626 (the Illinois conviction). Subsequently, the sentencing court inquired about Wilson's satisfaction with plea counsel:[3]

| | |
|---|---|
| COURT: | One final series of questions: Did [plea counsel], your attorney, did he do the things you wanted him to do as far as looking into your case, preparing it, and putting it in the best position as far as you could tell for disposition? |
| WILSON: | No, sir. |
| COURT: | You don't think he did? I believe he did. I think he did a good job for you. During the negotiations that you worked out—you actually didn't go with the negotiations in this case, you elected to have me make the choice; is that correct? |
| WILSON: | That's correct. Yes, sir. |
| COURT: | And so you are not satisfied with [plea counsel's] services? |
| WILSON: | No, sir. |
| COURT: | I believe that [plea counsel] did a good [job] for you, and therefore, I do not believe there is probable cause of prima facie basis for ineffective assistance of counsel. I wish you the best of luck, Mr. Wilson. |

Wilson moved for post-conviction relief pursuant to Rule 24.035, claiming that he was induced to plead guilty based on plea counsel's erroneous advice that he would receive credit for the time he served on the Illinois theft charge when in fact Missouri law does not permit the

---

[3] When Wilson expressed dissatisfaction with the performance of plea counsel at sentencing, the sentencing court engaged in a very short dialogue with Wilson regarding his concerns and made no inquiry into Wilson's complaints. The lack of a substantive inquiry into a defendant's complaints is potentially harmful to the judicial process because it reduces certainty that a defendant has received his constitutionally protected right to adequate assistance of counsel. We are fortunate, given the particular facts of Wilson's motion, that the sentencing court's lack of inquiry did not impede our review. We may not always have that good fortune. A sentencing court should make a full inquiry into a defendant's claim of ineffective assistance so as to remedy any constitutional deprivation that may have occurred, or reassure the parties and the general public that the constitutional mandates of the Sixth Amendment have been followed.

3

Department of Corrections to award Wilson such credit. The motion court denied Wilson's Rule 24.035 motion without an evidentiary hearing, finding that the record refuted Wilson's claims that he received ineffective assistance of counsel.[4] The motion court further found that Wilson failed to show that he would have proceeded to trial but for counsel's misinformation. Despite expressly denying Wilson's motion, the motion court, which was also the sentencing court, resentenced Wilson to seventeen years, eight months, and twenty-four days. Wilson now appeals.

## Point on Appeal

In his sole point on appeal, Wilson argues that the motion court clearly erred in denying his Rule 24.035 motion without an evidentiary hearing because plea counsel erroneously advised Wilson that he would receive credit on his Missouri sentence for time Wilson was incarcerated in Illinois prison during the pendency of this case, thereby rendering his plea involuntary.

## Standard of Review

We limit our review of the motion court's denial of a Rule 24.035 motion for post-conviction relief to a determination of whether the findings and conclusions are clearly erroneous. Rule 24.035(k); Milner v. State, 551 S.W.3d 476, 479 (Mo. banc 2018). The motion court's findings of fact and conclusions of law are clearly erroneous if, when viewing the record as a whole, we are "left with the definite and firm impression that a mistake has been made." Id.

## Discussion

We review claims of ineffective assistance of counsel in Rule 24.035 motions under the Strickland standard. See Strickland v. Washington, 466 U.S. 668, 694 (1984). Strickland established the test wherein a defendant claiming a violation of his constitutional right to

---

[4] The motion court's judgment incorrectly states that Wilson sought post-conviction relief pursuant to Rule 29.15 instead of Rule 24.035. This misstatement does not affect our standard of review or analysis.

4

effective assistance of counsel must show both deficient performance by counsel and prejudice stemming from that deficiency. Id. "To satisfy the prejudice requirement when challenging a guilty plea, the movant must allege facts showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Webb v. State, 334 S.W.3d 126, 128 (Mo. banc 2011) (internal quotations omitted).

Following a guilty plea, we consider any ineffective-assistance-of-counsel claim only as to the extent that the alleged ineffectiveness "affected the voluntariness and knowledge with which the plea was made." Barnes v. State, 385 S.W.3d 517, 522. "If the accused has been misled or induced to plead guilty by fraud, mistake, misapprehension, fear, coercion, or promises, the defendant should be permitted to withdraw his guilty plea." Samuel v. State, 284 S.W.3d 616, 619 (Mo. App. W.D. 2009) (quoting Hampton v. State, 877 S.W.2d 250, 252 (Mo. App. W.D. 1994)); see also Johnson v. State, 318 S.W.3d 313, 317 (Mo. App. E.D. 2010). "In cases where counsel affirmatively misinforms a client about any consequence of pleading guilty, direct or collateral, and thereby causes such client to possess a mistaken belief regarding his sentence, the critical test is whether a reasonable basis exists in the record for such a mistaken belief." Johnson, 318 S.W.3d at 318 (internal quotation omitted).

In cases where both the movant claims ineffective assistance of counsel and the motion court did not grant an evidentiary hearing, the movant must also prove he or she was entitled to an evidentiary hearing. "To be entitled to an evidentiary hearing, (1) the movant must allege facts, not conclusions, warranting relief; (2) the facts alleged must not be refuted conclusively by the record; and (3) the matters complained of must have resulted in prejudice to the movant." Ryan v. State, 547 S.W.3d 151, 154 (Mo. banc 2018).

5

## I.  Erroneous Advice of Counsel

Wilson maintains that plea counsel was ineffective and he was entitled to an evidentiary hearing on his post-conviction motion because his factual allegations, if true, show that plea counsel inaccurately advised Wilson that he would receive credit for the time he served in Illinois prison. Missouri law is clear that a "person shall receive credit toward the service of a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence, when the time in custody was related to that offense[.]" Section 558.031 RSMo (2016). However, "[t]ime in custody is not 'related to' an offense if the prisoner would have been in custody regardless of the offense." Farish v. Mo. Dep't. of Corr., 416 S.W.3d 793, 797 (Mo. banc 2013) (citing State ex rel. Nixon v. Kelly, 58 S.W.3d 513, 518–19 (Mo. banc 2001)). Here, the sentencing court noted on the sentencing report that Wilson's Missouri sentence was to run concurrent with "credit for time served" on his Illinois sentence. However, the record before us contains no finding to satisfy the Section 558.031 statutory requirement that the time Wilson spent in Illinois custody before he entered his blind guilty plea in Missouri be related to the Missouri offense. Without such a determination, the motion court lacked authority to grant Wilson credit for the time Wilson served on the Illinois charge.

Wilson alleges that he relied on plea counsel's advice regarding credit for his Illinois prison time when he entered his blind guilty plea. Wilson correctly notes that such advice was erroneous and contrary to Missouri law, and maintains that he would not have pleaded guilty and would have proceeded to trial but for plea counsel's assurances that he would receive credit for his Illinois prison time. Accordingly, Wilson avers that his guilty plea was involuntary.

The State counters that Wilson assured the plea court at the time of his guilty plea that no promises were made to induce his plea. The State reasons that Wilson's assurances conclusively

6

refute any claim that plea counsel promised Wilson he would receive credit for the time he served in Illinois prison. Critically, the transcript of the guilty plea contains no mention of any credit for the time Wilson served in Illinois prison. During the plea hearing, the plea court asked Wilson whether anyone made him a promise regarding the outcome of his plea and whether anyone told him how long he would be confined. Wilson said no.

Given the nature of Wilson's contention that plea counsel advised Wilson on the issue of credit for the time he served in Illinois prison, we are reluctant to conclude with certainty that the plea court's exchange with Wilson regarding "promises" refutes Wilson's post-conviction claim that he was misadvised by plea counsel. See Webb, 334 S.W.3d at 129 ("[A] negative response to a routine inquiry whether any promise other than stated on the record had been made is too general to encompass all possible statements by counsel to his client."). Further, "an attorney's advice is not the same as a promise—a defendant can say correctly that he was promised nothing, but this does not mean he was given correct advice as to the effects of his plea." Id. at 130. Our reluctance is heightened when considering the plea court's statements at sentencing that Wilson would receive credit for his Illinois time.

Viewing Wilson's plea and sentencing proceedings together, we find a logical and compelling reason to believe that plea counsel told Wilson he would obtain credit on his Missouri sentence for the time he had served in Illinois prison. Notably, the sentencing court affirmatively stated at sentencing that Wilson would receive credit for the time he served in Illinois prison. This pronouncement was made seemingly without any prompting from plea counsel. The sentencing court then sentenced Wilson to twenty years concurrent with credit for time served in Wilson's Illinois case. Although the record before us contains no direct colloquy between Wilson and the sentencing court or between plea counsel and the sentencing court

7

regarding the reason Wilson's sentence was noted to run concurrent with credit for his Illinois prison time, the record supports a reasonable and logical inference that a conversation regarding credit for the time Wilson was incarcerated in Illinois transpired between the court, plea counsel, and Wilson.

Because the record does not conclusively refute Wilson's claim that plea counsel advised him that he would receive credit for his Illinois sentence, we analyze plea counsel's performance under Strickland. "It is well settled in Missouri that both the trial court and a defendant's plea counsel have a duty to inform such defendant of the direct consequences of pleading guilty, but neither has a duty to advise such defendant of a guilty plea's collateral consequences." Johnson, 318 S.W.3d at 317. Further, "'knowledge that a criminal defendant *will not receive* credit for the time that he or she was free on bond. . . . is not a direct consequence of pleading guilty,' thus a defendant's plea counsel will not be found to be ineffective for failing to advise the defendant as to the *unavailability* of such credit." Id. (emphasis added) (quoting Redeemer v. State, 979 S.W.2d 565, 573 (Mo. App. W.D. 1998)). However, Missouri law recognizes a stark difference between a claim of "failing to advise" and a claim of "misinforming." See Webb, 334 S.W.3d at 129. Here, we evaluate whether plea counsel's affirmative advice that Wilson *would* receive credit for the time he served in Illinois prison caused Wilson to acquire a mistaken belief regarding his sentence, and whether that misinformation prejudiced Wilson. Id. at 318.

During the sentencing hearing, the sentencing court ordered that Wilson receive credit for the time he served in Illinois prison. Wilson was not granted credit for that time at sentencing and has not been granted such credit by the Missouri Department of Corrections. We find it was reasonable for Wilson to believe he would receive a credit for time served in Illinois prison based on plea counsel's advice and the sentencing court's assurance. At the time Wilson filed his

8

motion, he had not received credit for his Illinois prison time. Because the record does not refute Wilson's allegations that he was misadvised by plea counsel about the collateral consequences of his guilty plea, Wilson is entitled to an evidentiary hearing on that claim unless the record shows Wilson suffered no prejudice as a result of that misinformation.

## II.   No Prejudice to Wilson

Accordingly, we next consider the prejudice prong of Strickland. If the record shows no prejudice to Wilson, our inquiry is over.

The record before us is challenging because the motion court found that Wilson failed to show that he would have proceeded to trial despite the misinformation by counsel without conducting an evidentiary hearing to support that factual finding. The lack of an evidentiary hearing can be countenanced only if the record conclusively refutes Wilson's claims. Without an evidentiary hearing, the record as to whether plea counsel's advice materially affected Wilson's decision to plead guilty is limited to whether plea counsel told Wilson "how long [he] will be confined or have to serve in the penitentiary, if the Court accept[s] [his] plea of guilty[.]" Although Wilson responded "no," this inquiry does not address the nature and extent of plea counsel's advice regarding credit for time served, if any, and similarly fails to evaluate the impact of counsel's misinformation on Wilson's decision to plead guilty. See Webb, 334 S.W.3d at 129–30. Given these deficiencies, we are persuaded that the record before the motion court did not conclusively refute Wilson's claim of prejudice resulting from plea counsel's ineffective assistance.

However, the peculiarities of the record before us dictate our further consideration of Wilson's motion to vacate, set aside or correct his sentence under Rule 24.035. Although the motion court erred in denying Wilson an evidentiary hearing on his claims, the motion court then entered judgment resentencing Wilson to "seventeen years eight months and twenty-four days."

9

Under Rule 24.035 (j), the motion court is empowered to discharge or resentence the movant if it finds the sentence imposed was illegal or movant's constitutional rights were denied. The record before us shows that the motion court resentenced Wilson to account for the Illinois-prison-time credit Wilson did not receive following his sentencing. The motion court's conduct reflects a measure of fairness and justice apparently intended to address the underlying merits of Wilson's motion. But a critical step is lacking on this path to justice. Rather than simply adjusting the sentence, the motion court should have conducted an evidentiary hearing to determine the issue of prejudice, if any, resulting from plea counsel's conduct. See Sanders v. State, 531 S.W.3d 82, 85 (Mo. App. S.D. 2017) In particular, the motion court was required to conduct an evidentiary hearing to determine if Wilson was prejudiced by counsel's misinformation as to the availability of credit for prison time served on a separate charge in Illinois. It did not do so. Had the motion court's judgment stopped there, we would be compelled to remand this matter for an evidentiary hearing. However, the full record before use demonstrates that Wilson has suffered no prejudice from plea counsel's erroneous advice.

Despite the motion court's finding that Wilson did not carry his burden of proof on his claim, the motion court nevertheless resentenced Wilson by lessening the original twenty-year sentence to reflect the time Wilson had served on the Illinois charge during the pendency of his Missouri charge. In so doing, the motion court vacated the initial illegal sentence and resentenced Wilson to a specific term of years without regard to credit for time served in Illinois, which it may do under Rule 24.035(j). By correcting the illegal sentence, the motion court eliminated any prejudice Wilson may have suffered as a result of plea counsel's misinformation. Wilson was resentenced to a term in accordance with the amount of time he believed he would

10

have to spend in prison on the Missouri charge per plea counsel's advice. Accordingly, the record before this Court refutes Wilson's claim of prejudice. Wilson's point on appeal is denied.

<u>Conclusion</u>

The judgment of the motion court is affirmed.

_____
KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concur.
Colleen Dolan, J., concurs.

11